## IN THE UNITED STATES DISTRICT COURT
## IN THE DISTRICT OF DELAWARE

DONALD DUROSS,

v.

CONNECTIONS COMMUNITY
SUPPORT PROGRAMS, INC., AND
MICHELL WHITE, PA-C

            Defendant

CA No. 1:20-cv-00109-RGA

 

**PLAINTIFF'S ANSWERING BRIEF IN SUPPORT OF DENYING
DEFENDANT'S MOTION TO DISMISS AND
MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

**THE POLIQUIN FIRM, LLC**

<u>/s/ Ronald G. Poliquin, Esquire</u>
 Ronald G. Poliquin, Esquire
 155 South Bradford Street, Suite 203
 Dover, DE 19904
 (302) 702-5500
 Bar ID No.: 4447
 *Attorney for Plaintiff Donald Duross*

Date: June 5, 2020

# **TABLE OF CONTENTS**

PAGE

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . .  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . .  . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . .  . . . . . . . . . . . . . . . . . . . . . . . . .............8

I.   STANDARD OF REVIEW…………………………………………………....8

II.  THE FIRST AMENDED COMPLAINT STATES WITH SPECFICITY
     THE ACTIONS OF PA WHITE AND CONNECTIONS  WHICH
     VIOLATED DUROSS' CONSTITUTIONAL RIGHTS**.**…………………..9

III. DUROSS SHOULD BE GIVEN LEAVE TO FILE A SECOND
     AMENDED COMPLAINT…………………………………………………...17

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . .  . . . . . . . . . . . . . . . . . . . . . . . .20

Exhibit 1: Unreported Cases

Exhibit 2: Proposed Second Amended Complaint

## **TABLE OF CITATIONS**

*Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)…………...11

*Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011)………………………………………………………………………..10

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)……………………………….…8, 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)………………………..7, 9

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) ………………………………...9

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016)………………7

*Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014)……………..7, 9

*Diaz v. Carroll*, 2008 U.S Dist. LEXIS 58337……………………………………16

*Dupree v. Doe,* 2010 US Dist. LEXIS 69062 (D. Del., July 8, 2010)………...10, 11

*Erickson v. Pardus,* 551 U.S. 94(2007)…..……………………………………...8

*Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989)……………………..11

*Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014)………………………….…7

*Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126 (D. Del. 1992)……….11

*Monell v. New York City Dep't of Sec. Serv.*, 436 U.S. 658(1978)……………..….8

*Natale v. Camden County Corr. Facility*, 318 F.3d 575 (3d Cir. 2003)…………..10

*Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir.1989)………….8

*Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014)…………....8, 9

## STATEMENT OF FACTS

### Connections' Medical Treatment of Donald Duross

Prior to his incarceration, Connections was notified of Duross' medical condition of Ulcerative Colitis.

On July 7, 2017, Plaintiff Donald Duross ("Duross") submitted a letter to Connections Physician Assistant Mitchell White at the  Howard R. Young Correctional Facility.[1] The letter stated Duross was due for another colonoscopy as recommended by the Mid Atlantic GI Consultants.[2] Duross is due for a colonoscopy every two years consistent with his diagnosis of Ulcerative Colitis and Mr. Duross' father dying of colon cancer (family history).[3]

Despite Duross submitting the letter on July 7, 2017 along with multiple medical grievances and complaints, the colonoscopy was not scheduled until September 18, 2018- fourteen (14) months after Duross received the letter from Mid-Atlantic GI Consultants.[4]

After being scheduled for the colonoscopy, Duross was sent to the west side of the prison to perform a bowel preparation by Connections nursing staff and P.A. Mitchell White. During the bowel preparation, Mr. Duross' medications to treat his

[1] ¶1 of Plaintiff's First Amended Complaint
[2] ¶1 of Plaintiff's First Amended Complaint
[3] ¶1 of Plaintiff's First Amended Complaint
[4] ¶2 of Plaintiff's First Amended Complaint

Ulcerative Colitis were taken away by him. One of the medications taken was Mr. Duross' Apriso pills, an anti-inflammatory to prevent "flare ups" involving his Ulcerative Colitis.[5]

When Duross arrived for his colonoscopy at St. Frances Hospital, it could not be completed as a result of Connections medical staff performing Duross' bowel preparation incorrectly.[6]

Upon returning from the failed colonoscopy, Duross was never given back his medications, specifically his Apriso pills. Duross was under extreme distress without his Apriso because he knew that without the pills, he was at a high risk of undergoing "flare-ups". Realizing the dire situation, Duross submitted a medical grievance on the incident complaining about the botched prep and lack of medical medications. Duross went one full week (7 days) without receiving his essential medication.[7]

As a result of not having his essential medications, Duross went into a full-blown flare up of his Ulcerative Colitis. The flare up included Duross bleeding from his anus, bloody mucus in stool, along with mucus accompanied by extreme

---

[5] ¶4 and ¶5 of Plaintiff's First Amended Complaint
[6] ¶4 and ¶5 of Plaintiff's First Amended Complaint
[7] ¶5 and ¶6 of Plaintiff's First Amended Complaint

abdominal pain. By the time Duross did receive his medication it was too late as he was already sick from the flare up.[8]

On September 21, 2018. P.A.  Mitchell White advised Duross to complete a medical grievance form relating to the botched bowel preparation. One month later, Duross was scheduled for another colonoscopy at St. Frances Hospital. Prior to the procedure, Duross experienced anal leakage of mucus and blood from his rectum.[9]

When Duross complained about the flare-ups, his complaints fell on deaf ears. Connections staff only responded that his colonoscopy was already scheduled. Duross was never taken to the emergency room pursuant to the standard of care.[10]

After Connections failed to respond to his grievances, Duross reached out to the Deputy Warden and other higher ups. However, Duross did not receive any responses. Duross finally received his colonoscopy on January 30, 2019 at St. Frances Hospital performed by Dr. Laura Connor.

---

[8] ¶6 and ¶8 of Plaintiff's First Amended Complaint
[9] ¶6 and ¶8 of Plaintiff's First Amended Complaint
[10] ¶6 of Plaintiff's First Amended Complaint

### Connections Policies Regarding Duross and Similarly Situated Inmates

Connections policies impacting Duross and other inmates involved [11]:

    a)    They failed to properly prepare Duross for his semi-annual colonoscopy pursuant to the appropriate standards and guidelines knowing that Duross, suffering from Ulcerative Colitis, was at a high risk for colon cancer. By not properly preparing Duross for his colonoscopy, Mr. Duross was unable to receive a colonoscopy.

    b)    They failed to provide Mr. Duross with his medication, Apriso, to prevent flare ups for his Ulcerative Colitis after the failed the colonoscopy even after Mr. Duross complained via medical grievances and sick call.

    c)    They failed to refer Mr. Duross to the emergency room even after he had consistent flare ups involving the leakage of mucus and blood from his rectum, abdominal pains, and his weight loss.

    d)    They put the financial concerns of Connections ahead of Mr. Murach's health needs.

---

[11] ¶3, 4 & 5 of Plaintiff's First Amended Complaint

     f)     Connections failed to provide proper treatment, medications, and tests for Duross' ulcerative colitis.

     g)     They failed to respond in a timely manner to his legitimate medical grievances.

Connections failed to advocate to DOC Wardens on behalf of Duross regarding the severity of Duross' serious medical conditions, injury and/or the need for prompt medical and/or surgical treatment.[12] Lastly, Connections failed to provide emergency transportation when necessary.[13]

---

[12] ¶7 of Plaintiff's First Amended Complaint
[13] ¶6 of Plaintiff's First Amended Complaint

## ARGUMENT

### I.    STANDARD OF REVIEW

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In addition, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S.Ct. 346, 347 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

When reviewing the sufficiency of a complaint, a court should follow a three-step process: (1) consider the elements necessary to state a claim; (2) identify allegations that are merely conclusions and therefore are not well-pleaded factual

allegations; and (3) accept any well-pleaded factual allegations as true and determine whether they plausibly state a claim. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

In addition, pro se litigants are held to a lower standard. Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

## I. THE FIRST AMENDED COMPLAINT STATES WITH SPECFICITY THE ACTIONS OF PA WHITE AND CONNECTIONS WHICH VIOLATED DUROSS' CONSTITUTIONAL RIGHTS.

A private corporation, such as Connections, may be held liable for constitutional violations if it knew or acquiesced in the deprivation of plaintiff's rights. *Monell v. New York City Dep't of Sec. Serv.*, 436 U.S. 658(1978).

In order to establish liability, plaintiff must show that the corporation "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused plaintiff's constitutional harm." *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir.1989). Connections contends that Plaintiff's First Amended Complaint fails to reference

or even identify a single policy, practice or custom maintained by Connections that caused the alleged constitutional harm. Without such facts and evidence, the constitutional claims against Connection must be dismissed.

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp*., 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In addition, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570).

To determine whether a complaint meets the pleading standard as set forth in *Twombly* and *Iqbal*, the court must: (1) outline the elements a plaintiff must plead to a state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; and (3) look for well-pled factual allegations, assume their veracity, and then "determine whether they

plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (internal citations omitted) (citing *Iqbal*, 556 U.S. at 679; *Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011)). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In *Dupree v. Doe*, this Court denied a motion to dismiss when a complaint failed to use the specific terms, policy or custom, but decided that the facts stated in the Complaint could be inferred to deliberate indifference on its behalf enough to establish liability. 2010 US Dist. LEXIS 69062 (D. Del., July 8, 2010).

In order to establish that a prison medical provider is directly liable for the alleged constitutional violations, plaintiff "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003)

Assuming the acts of a defendant's employees have violated a person's constitutional rights, those acts may be deemed the result of a policy or custom of the entity for whom the employee works, thereby rendering the entity liable under § 1983, where the inadequacy of existing practice is so likely to result in the violation of constitutional rights that the policymaker can reasonably be said to have been deliberately indifferent to the need. See *Natale*, 318 F.3d at 584.

11

"'Policy is made when a decisionmaker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict.'" *Miller v. Correctional Med. Sys., Inc*., 802 F. Supp. 1126, 1132 (D. Del. 1992) (alteration in original) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Id. (citing *Andrews*, 895 F.2d at 1480; *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989)).

Liberally construing the Complaint, this Court in *Dupree* decided that Plaintiff alleged CMS had a policy, custom, or practice of placing cost containment ahead of providing necessary medical care. Thus, the Court concluded that Plaintiff has adequately alleged a § 1983 claim sufficient to survive a motion to dismiss. Accordingly, the Court must deny Defendant's Motion to Dismiss the 1983 claim raised against Connections.

Here, Duross' Complaint outlines, in specificity, facts which establish that Connections acted with deliberate indifference to the consequences, and that it established and maintained a policy, practice or custom which directly caused plaintiff's constitutional harm. The existence of Connections' unconstitutional

customs, practices, and policies that violate the Eighth Amendment can be inferred from the detailed facts contained in the Complaint.

During its contractual obligations, Connections was responsible for the actions of its employees in their care and treatment of Donald Duross and other inmates at Howard Young Correctional Center.[14]

Connections were deliberately indifferent to Duross' serious medical needs in a way which violated his civil rights pursuant to 42 U.S.C. §1983, and which violated his 8th Amendment right to be free of cruel and unusual punishment. Connections through its procedures, customs and policies displayed continuous deliberate indifference to the serious medical needs of Duross as follows

The policies specifically cited[15]:

      a)    They failed to properly prepare Duross for his semi-annual colonoscopy pursuant to the appropriate standards and guidelines knowing that Duross, suffering from Ulcerative Colitis, was at a high risk for colon cancer. By not properly preparing Duross for his colonoscopy, Mr. Duross was unable to receive a colonoscopy.

---

[14] ¶2 of Plaintiff's First Amended Complaint
[15] ¶4 & 5 of Plaintiff's First Amended Complaint

b)      They failed to provide Mr. Duross with his medication, Apriso, to prevent flare ups for his Ulcerative Colitis after the failed colonoscopy even after Mr. Duross complained via medical grievances and sick call.

c)      They failed to refer Mr. Duross to the emergency room even after he had consistent flare ups involving the leakage of mucus and blood from his rectum, extreme abdominal pains, and his extreme weight loss.

d)      They put the financial concerns of Connections ahead of Mr. Murach's health needs.

f)      Connections failed to provide proper treatment, medications, and tests for Duross' ulcerative colitis.

g)      They failed to respond in a timely manner to his legitimate medical grievances.

Connections failed to advocate to DOC Wardens on behalf of Duross regarding the severity of Duross' serious medical conditions, injury and/or the need for prompt medical and/or surgical treatment.[16] Lastly, Connections failed to provide emergency transportation when necessary.[17]

---

[16] ¶7 of Plaintiff's First Amended Complaint
[17] ¶6 of Plaintiff's First Amended Complaint

Even when Duross was experiencing extreme flare ups for a period of four months, Connections failed to transport Duross to the emergency room which is the accepted standard of care to treat Duross' serious medical conditions.

Duross' claims, although somewhat inarticulate, are straightforward nonetheless. On July 7, 2017, Plaintiff Donald Duross ("Duross") submitted a letter to Connections Physician Assistant Mitchell White at the Howard R. Young Correctional Facility. The letter stated Duross was due for another colonoscopy as recommended by the Mid Atlantic GI Consultants. The colonoscopy was not scheduled until September 18, 2018- fourteen (14) months after Duross received the letter from Mid-Atlantic GI Consultants.  After being scheduled, P.A. Mitchell White improperly supervised the Connections staff who performed the preparation. During the bowel preparation, Mr. Duross' medications to treat his Ulcerative Colitis were taken away by him. One of the medications taken was Mr. Duross' Apriso pills, an anti-inflammatory to prevent "flare ups" involving his Ulcerative Colitis. The colonoscopy could not be completed as a result of Duross' bowel preparation being completed incorrectly.

Upon returning for the failed colonoscopy, Duross was never given back his medications, specifically his Apriso pills. Duross went one full week (7 days) without receiving his essential medication. As a result of not having his essential medications, Duross went into a full-blown flare up of his Ulcerative Colitis. The

flare up included Duross bleeding from his anus, bloody mucus in stool, along with abdominal pain. By the time Duross did receive his medication it was too late as he was already sick from the flare up.

On September 21, 2018. P.A.  Mitchell White, instead of sending him to the emergency room advised Duross to complete a medical grievance form relating to the botched bowel preparation. One month later, Duross was scheduled for another colonoscopy at St. Frances Hospital.

When Duross complained about the flare-ups to PA White and other Connections staff, his complaints fell on deaf ears. Connections staff only responded that his colonoscopy was already scheduled. Duross was never taken to the emergency room pursuant the standard of care. Duross finally received his colonoscopy on January 30, 2019 at St. Frances Hospital performed by Dr. Laura Connor.

These are factual allegations that raise a legitimate 1983 claim against Connections.  It would be premature at this juncture to bar Plaintiff from fleshing out a record proving that Connections' policies, practices, and customs demonstrate deliberate indifference to justify a 1983 violation.

## II.   DUROSS SHOULD BE GIVEN LEAVE TO AMEND  HIS COMPLAINT TO ADD A MEDICAL MALPRACTICE CLAIM AND CLARIFY THE FACTS AS ORIGINALLY OUTLINED.

After amending once or after an answer has been filed, the plaintiff may amend only with leave of the court or the written consent of the opposing party, but leave shall be freely given when justice so requires. See *Fed. R. Civ. P. 15(a)*. *Diaz v. Carroll,* 2008 U.S. Dist. LEXIS 58337.

The United States Court of Appeals for the Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that a particular claim will be decided on the merits rather than on technicalities. Leave to amend should be granted absent a showing of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc. Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted. If the proposed amendment is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend. *Diaz v. Carroll,* 2008 U.S. Dist. LEXIS 58337

Plaintiff counsel requests leave to file an amended complaint in order to add a medical malpractice claim and further explain Connections policies, practices, and customs demonstrate deliberate indifference to justify a 1983 violation. Leave

should be granted to ensure that the claim will be decided on the merits rather than on technicalities. Here, there is no bad faith motive or undue delay in granting the leave.

Duross' current counsel requests leave to both clarify Duross' current claims and add an additional medical malpractice claim.

The malpractice claim involves the period of time: November 2018 through January 30, 2019. Therefore, the allegations are within the two-year period regarding the statute of limitation. Plaintiff plans to allege that Connections breached the standard of care in treating Mr. Duross by failing to properly prep Mr. Duross for his colonoscopy in November 2018. Connections failed to provide Mr. Duross with his essential medication Apriso which caused his flare ups from his ulcerative colitis for approximately four months from November 2018 until January 2019. As a result of this breach in the standard of care, Mr. Duross suffered flare ups related to his ulcerative colitis which included bleeding from his anus, bloody mucus in stool, accompanied by abdominal pain and Mr. Duross lost 28lbs of body weight. As a result of the breach in the standard of care, Mr. Duross' colonoscopy on January 30, 2019 only addressed his inflammation of his colon and was not a test for colon cancer. Lastly, Connections breached the standard of care when they did not send him to an emergency room to treat his flare-ups.

There would be no prejudice to Connections as they were on notice regarding Mr. Duross medical issues since May 7, 2019 because the additional claim relates back to the facts stated in the original complaint that Duross first filed in Superior Court.

## <u>CONCLUSION</u>

Plaintiff Donald Duross has presented a factual basis in his complaint detailing Defendants' actions which led to his current medical crisis. Plaintiff should be able to proceed with the prosecution of his case against Connections. In addition, Plaintiff requests leave to amend his complaint. For the reasons and upon the authorities cited here, Plaintiff submits that Connections' Motion to Dismiss be denied and Plaintiff's Motion for Leave to Amend is granted.

**THE POLIQUIN FIRM, LLC**

<u>/s/ Ronald G. Poliquin, Esquire</u>
Ronald G. Poliquin, Esquire
155 South Bradford Street, Suite 203
Dover, DE 19904
(302) 702-5500
Bar ID No.: 4447
*Attorney for Plaintiff Donald Duross*

Date: June 5, 2020